# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN P. O'NEILL | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-3437 |
| | : | |
| GLENN KERRIGAN, et al. | : | |

## **MEMORANDUM**

**Juan R. Sánchez, J.**                                                    **February 22, 2013**

During his senior year at Pius X High School in Bangor, Pennsylvania, Plaintiff Sean P. O'Neill was arrested at school in the middle of the school day pursuant to a juvenile arrest warrant charging him with possession and delivery of marijuana off school grounds. The charges against O'Neill were ultimately resolved in a consent decree which established a six-month period of probation. As a result, O'Neill was never adjudicated delinquent. O'Neill brings this action pursuant to 42 U.S.C. § 1983 against the arresting officers, Borough of Bangor Police Chief Michael Hunsicker and Police Officer Glenn Kerrigan, alleging Defendants orchestrated his arrest to make an example of him within the school, in complete derogation of the privacy protections to which he was entitled as a juvenile, and in violation of his Fourth, Ninth, and Fourteenth Amendment rights. O'Neill also brings related state law claims against Defendants.

Defendants ask this Court to dismiss O'Neill's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Although this Court is deeply troubled by the conduct of the officers in this case, the constitutional rights they are alleged to have violated were not clearly established at the time of O'Neill's arrest. Defendants' motion will therefore be granted as to O'Neill's § 1983 claims on the basis of qualified immunity. O'Neill's state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**FACTS**[1]

In February 2010, O'Neill was a senior at Pius X High School, where he was a good student and a member of the varsity basketball team with plans to play basketball in college. On February 9, 2010, at approximately 12:30 p.m., Kerrigan and Hunsicker appeared in uniform at Pius X with a juvenile arrest warrant charging O'Neill with possession and delivery of marijuana based on conduct that had occurred off school grounds a month earlier, on January 8, 2010. After conferring with the school principal, Kerrigan and Hunsicker, accompanied by the principal, went to O'Neill's classroom and physically escorted him to the principal's office, where they informed him of the charges against him and advised him that he had Miranda rights, which would be explained when his mother arrived. Kerrigan and Hunsicker also provided a copy of the charges against O'Neill to the principal—allegedly in violation of Pennsylvania law—without advising O'Neill of his right not to have the charges so provided. While in the principal's office, Hunsicker conducted a pat-down search of O'Neill, after which O'Neill was handcuffed from behind, "paraded out of the Principal's office, along the corridors of the school, past various students and then taken out of the front door in view of virtually all classrooms to be placed in a Borough of Bangor police patrol car at which time he was then transported to the Bangor Police Station." Am. Compl. ¶ 11.

Once at the police station, where he was met by his mother, O'Neill was advised of his Miranda rights, and Hunsicker contacted the Northampton County Juvenile Probation Office. Following a discussion between O'Neill's mother and Juvenile Probation Officer Shelly Bundro, Bundro advised Hunsicker to release O'Neill into his mother's custody and to forward juvenile

---

[1] The following facts are drawn from the allegations of O'Neill's Amended Complaint, which this Court must accept as true in evaluating the instant motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

referral forms to her later in the week.[2]  O'Neill and his mother left the police station around 2:30 p.m.

The charges against O'Neill were ultimately resolved by way of a consent decree entered by the Northampton County Court of Common Pleas on April 12, 2010, which established a six-month period of probation.  As a result of the consent decree, O'Neill was never adjudicated delinquent under Pennsylvania law, and school officials thus need never have been notified of the underlying conduct had Defendants not chosen to arrest O'Neill on school grounds.

Following his arrest, O'Neill was suspended from school and prohibited from playing on the varsity basketball team, jeopardizing his ability to graduate on time as well as his college career. Because of the suspension, O'Neill changed schools mid-semester, which required him to complete certain additional studies in order to graduate on time.  O'Neill graduated from Pleasant Valley High School on-schedule in June 2010, and thereafter matriculated to Wentworth College in the fall of 2010, where he was a member of the College's basketball team.  O'Neill has since transferred to Temple University.

O'Neill alleges his arrest on school property for a non-school-related offense was an abuse of governmental authority, which was done for the sole purpose of making an example of him, in complete derogation of Pennsylvania statutes and rules protecting the privacy of juveniles.  He brings § 1983 claims for violations of his Fourth, Ninth, and Fourteenth Amendment rights (Counts I and II), and state law claims for violation of his right to privacy under the Pennsylvania Constitution, assault and battery, false imprisonment, and abuse of process (Counts III through VI).

---

[2] According to the Amended Complaint, Bundro has expressed surprise O'Neill was arrested prior to the Probation Office being notified, calling it "weird."  *Id.* ¶ 24.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Defendants argue O'Neill's § 1983 claims should be dismissed because the conduct alleged does not amount to a violation of O'Neill's constitutional rights as a matter of law and, even if there was a constitutional violation, they are entitled to qualified immunity because the rights violated were not clearly established at the time of O'Neill's arrest. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability" and, as such, should be resolved "at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotations omitted). The qualified immunity analysis has two components: (1) whether the facts, viewed in the light most favorable to the party asserting the injury, show the official's conduct violated a federal right; and

(2) whether the right infringed was clearly established at the time of the alleged violation. *Id.* at 201.

A right is clearly established for qualified immunity purposes if "it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. A district court may

"exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand."

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

O'Neill's federal claims challenge the manner in which his arrest was conducted. In Count

I, O'Neill alleges his arrest violated his right to be free from unreasonable seizures under the Fourth

Amendment and his right to privacy under the Ninth Amendment. In Count II, he alleges his arrest

violated his procedural and substantive due process rights under the Fourteenth Amendment. Both

Counts, however, are premised on the same alleged underlying violations of state law. O'Neill

argues by arresting him on school grounds in view of the school community, and by disclosing the

charges against him to the school principal, Defendants violated the Pennsylvania Juvenile Act and

Rules of Juvenile Court Procedure, both of which protect the confidentiality of juvenile law

enforcement and court records. O'Neill cites 42 Pa. Cons. Stat. Ann. § 6308, which prohibits public

disclosure of the contents of law enforcement records concerning a child, subject to certain

exceptions not applicable here.[3] He also cites Juvenile Court Rule 163 and 42 Pa. Cons. Stat. Ann.

---

[3] Section 6308 requires juvenile law enforcement records and files to be kept separate from the records and files of adults, and limits access to juvenile records to:

> (1) [t]he court having the child before it in any proceedings[;] (2) [c]ounsel for a party to the proceeding[;] (3) [t]he officers of institutions or agencies to whom the child is committed[;] (4) [l]aw enforcement officers of other jurisdictions when necessary for the discharge of their official duties[;] [and] (5) [a] court in which the child is convicted of a criminal offense for the purpose of a presentence report or other dispositional proceeding, or by officials of penal institutions and other penal

§ 6341(b.1), both of which authorize disclosure of information regarding delinquent acts by a juvenile to school officials only when the juvenile has been adjudicated delinquent.[4] Finally, O'Neill invokes Juvenile Court Rule 101(C), which specifies the Juvenile Rules are to be construed "to effectuate the purposes stated in the Juvenile Act," including the protection of juveniles' privacy rights.[5]

---

facilities to which he is committed, or by a parole board in considering his parole or discharge or in exercising supervision over him.

42 Pa. Cons. Stat. Ann. § 6308(a). The statute prohibits public access to juvenile records "[u]nless a charge of delinquency is transferred for criminal of prosecution under section 6355 . . . , the interest of national security requires, or the court otherwise orders in the interest of the child," or unless the child has been adjudicated delinquent and certain other conditions are met. *Id.* § 6308(a) & (b).

[4] Juvenile Court Rule 163 and § 6341(b.1) are not phrased as prohibitions against disclosure to school officials but instead impose affirmative disclosure obligations on a court when a finding of delinquency is made. Specifically, "[u]pon finding a child to be a delinquent child," a court must disclose to the child's school principal the child's name and address, the delinquent act or acts the child was found to have committed, a brief description of the act or acts, and the disposition of the case. Pa. R. Juv. Ct. P. 163(A); 42 Pa. Cons. Stat. Ann. § 6341(b.1)(1). Defendants argue these provisions are not relevant to this case because they do not address the legality of disclosing criminal activity by a juvenile to school officials prior to an adjudication of delinquency. Def.'s Letter Mot. 4 n.5. However, because disclosure of this information is otherwise prohibited, except as specifically permitted in 42 Pa. Cons. Stat. Ann. §§ 6307 (regarding juvenile court records) and 6308, it is reasonable to infer that Rule 163 and § 6341(b.1) permit disclosures to school officials only in the circumstances expressly authorized therein.

[5] Although protection of privacy is not among the Juvenile Act's expressly stated purposes, *see* 42 Pa. Cons. Stat. Ann. § 6301(b) (listing purposes), the Pennsylvania Superior Court has characterized protection of a minor child's privacy as a "key aspect" of the Act. *In re M.B.*, 869 A.2d 542, 546 (Pa. Super. Ct. 2005); *see also* 42 Pa. Cons. Stat. Ann. § 6301(b)(2) (stating the purposes of the Juvenile Act include "provid[ing] for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community"); *cf. United States v. Three Juveniles*, 61 F.3d 86, 90 (1st Cir. 1995) (recognizing that preserving the confidentiality of juvenile proceedings serves the purpose of rehabilitation by "[p]rotect[ing] . . . the juvenile from the stigma of a criminal record").

The Court assumes, for purposes of the instant motion, that Defendants' disclosure of the charges against O'Neill to the school principal violated at least § 6308. At the time of his arrest, O'Neill had never previously been adjudicated delinquent, and the charges against him had not been referred for criminal prosecution and were not the subject of a court order authorizing disclosure. Therefore, § 6308 prohibited disclosure of law enforcement records concerning O'Neill beyond those persons specifically identified in the statute, a group which does not include school officials. *See also* Pa. R. Juv. Ct. P. 210 cmt. ("When issuing an arrest warrant, a magisterial district judge is included in the definition of court pursuant to Rule 120, and as such, the magisterial district judge is to maintain the confidentiality of records as required by Rule 160."). Defendants argue common sense dictates that police officers must be able to provide school officials with some "basic information as to the circumstances of the incident which led to the arrest" so as to be able to justify their presence on school grounds. Defs.' Letter Mot. 4 n.5. Defendants do not explain, however, why disclosure of the underlying charges, as opposed to the existence of an arrest warrant, would be necessary. Moreover, the statute does not include such an exception.

It is far less clear whether O'Neill's arrest on school grounds violated state law. As Defendants observe, Juvenile Court Rule 213(A) authorizes police officers to execute a juvenile arrest warrant "at any place within the Commonwealth," without limitation. Pa. R. Juv. Ct. P. 213(A). Noting the Juvenile Court Rules must be construed to effectuate the purposes of the Juvenile Act, O'Neill argues Rule 213(A) should not be interpreted in a manner that permits violations of the substantive law protecting the confidentiality of juvenile delinquency proceedings. O'Neill thus contends because the arrest of a juvenile on school premises is inconsistent with the confidentiality accorded juvenile law enforcement records, and because alternative means of

notifying a juvenile of charges against him are available, *see* Pa. R. Juv. Ct. P. 124(B) (authorizing service of a summons or notice in person *or* by first-class mail), an in-school arrest is only permissible when exigent circumstances exist.

This Court appreciates that the making of an in-school arrest is somewhat at odds with the spirit, if not the letter, of the confidentiality provisions O'Neill cites. While it may be possible to arrest a juvenile on school premises without disclosing the charges against him, if the arrest is made in view of the school community, the fact the juvenile is the subject of delinquency proceedings may be readily inferred. Although O'Neill's limiting construction reconciles confidentiality considerations with juvenile arrest procedures, it is not at all clear this construction is a correct interpretation of state law. State law permits juveniles to be taken into custody "[p]ursuant to the laws of arrest," even for misdemeanor offenses, 42 Pa. Cons. Stat. Ann. § 6324(2); Pa. R. Juv. Ct. P. 200(2) & cmt., authorizes issuance of juvenile arrest warrants upon probable cause, Pa. R. Juv. Ct. P. 210(A), 211(A), and places no express limitations on where such warrants may be executed. Significantly, the parties have not cited, and this Court has not found, any cases suggesting the police may only execute a juvenile arrest warrant on school premises in exigent circumstances. *Cf. In re R.P.*, 918 A.2d 115, 121-22 (Pa. Super. Ct. 2007) (upholding search of juvenile incident to his arrest by school police officers on school grounds). Pennsylvania law thus does not clearly prohibit police from executing a juvenile arrest warrant on school grounds. In this context, the Court will evaluate the sufficiency of O'Neill's allegations that Defendants violated his rights under the federal Constitution.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend IV. As a general matter, "an arrest . . .

pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quotation omitted). While the Fourth Amendment reasonableness standard in principle requires a balancing of all relevant factors, *Whren v. United States*, 517 U.S. 806, 817 (1996), when an arrest is supported by probable cause, such balancing is only necessary "when [an arrestee] makes a colorable argument that an arrest, with or without a warrant, was 'conducted in an extraordinary manner, unusually harmful to [his] privacy or even physical interests,'" *Atwater v. City of Lago Vista*, 532 U.S. 318, 352-53 (2001) (quoting *Whren*, 517 U.S. at 818) (second alteration in original). Absent extraordinary circumstances, an arrest based on probable cause does not violate the Fourth Amendment. *See id.* at 354-55.

Here, O'Neill does not dispute his arrest pursuant to a juvenile arrest warrant was supported by probable cause. Rather, he argues the manner in which his arrest was conducted was unreasonable because it violated his privacy rights under state law and the United States Constitution. When O'Neill was arrested, however, the law was not clearly established that executing a juvenile arrest warrant on school grounds in view of the school community constitutes the kind of extraordinary circumstances necessary to preclude application of the "usual rule" that probable cause renders an arrest reasonable under the Fourth Amendment. *See Whren*, 517 U.S. at 818-19. As a result, the Court finds Defendants are entitled to qualified immunity with respect to O'Neill's Fourth Amendment claim.

Insofar as O'Neill argues his arrest was extraordinary because Defendants violated the confidentiality provisions of the Pennsylvania Juvenile Act and Juvenile Court Rules in conducting it, whether Defendants violated state law is not dispositive of the Fourth Amendment inquiry. *See*

*id.* 815-19 (holding traffic stop based on probable cause did not violate the Fourth Amendment, even though stop violated police regulations limiting authority of plainclothes officers in unmarked vehicles to enforce traffic laws, and noting such violation "does not remotely qualify as such an extreme practice" as to require balancing analysis); *see also Virginia v. Moore*, 553 U.S. 164, 166, 176 (2008) (holding arrest for minor traffic offense based on probable cause, but prohibited by state law, did not violate the Fourth Amendment). Here, moreover, it is not clear whether Defendants violated state law by making an arrest on school grounds (as opposed to disclosing the charges to the school principal).

The precise contours of the circumstances in which an arrest will be deemed sufficiently extraordinary to require a balancing of factors are not well defined. In recognizing this exception to the general rule that "probable cause to believe the law has been broken 'outbalances' private interest in avoiding police contact," *Whren*, 517 U.S. at 818, the Supreme Court has held such extraordinary seizures (or searches) include seizures by means of deadly force, which implicate the suspect's "fundamental interest in his own life," *Tennessee v. Garner*, 471 U.S. 1, 9 (1985); a compelled surgical intrusion into a suspect's body for evidence, implicating the "most personal and deep-rooted expectations of privacy," *Winston v. Lee*, 470 U.S. 753, 760 (1985); and arrests made pursuant to a warrantless or unannounced physical entry into a suspect's home, which implicate "the special protection afforded the individual in his home by the Fourth Amendment," *Welch v. Wisconsin*, 466 U.S. 740, 754 (1984) (holding the Fourth Amendment prohibits a warrantless, nighttime entry into a suspect's home to arrest him for a civil traffic offense); *see also Wilson v. Arkansas*, 514 U.S. 927, 931 (1995) (holding "the reasonableness of a search of a dwelling may depend in part on whether law enforcement officers announced their presence and authority prior to

entering"). The Supreme Court has also held an arrest supported by probable cause may nevertheless violate the Fourth Amendment when the arresting officers use excessive force, *Graham v. Connor*, 490 U.S. 386, 395-97 (1989), or when they "bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant," *Wilson v. Layne*, 526 U.S. 603, 614 (1999). In contrast, the fact an arrest may have been unnecessary under the circumstances, subjecting the arrestee gratuitously to the physical incidents of arrest, does not render the arrest extraordinary for Fourth Amendment purposes. *See Atwater*, 532 U.S. at 346-47, 354-55 (holding an arrest based on probable cause for a misdemeanor seatbelt violation punishable only by a fine was not extraordinary, and thus did not require a balancing analysis, even though the arresting officer could have given the plaintiff a citation and the physical incidents of arrest thus amounted to "merely gratuitous humiliations imposed by a police officer who was (at best) exercising extremely poor judgment").

The foregoing examples of extraordinary seizures do not clearly encompass the arrest of a juvenile on school grounds. Even assuming O'Neill had a reasonable expectation of privacy on the premises of his private high school, akin to the expectation of privacy a person would have in his own home, *see Doe v. Heck*, 327 F.3d 492, 511-13 (7th Cir. 2003), the Defendants' conduct in this case falls short of the type of privacy violation that has been held to be extraordinary in other cases. O'Neill was arrested pursuant to a warrant the validity of which is unchallenged, and Defendants are not alleged to have failed to announce their presence at the school or otherwise to have come onto school grounds unlawfully. Nor is there any allegation Defendants used excessive force in making the arrest or brought representatives of the media or other third parties into the school.

Although not addressed by the parties, one federal appellate court has held a lawfully arrested

suspect may, in some circumstances, have a Fourth Amendment unreasonable seizure claim where the arrestee was subjected to a "perp walk."[6]  However, the circumstances of O'Neill's arrest are distinguishable from the kind of perp walk that has been held to violate the Fourth Amendment. *Compare Lauro*, 219 F.3d at 203-04, 211-13 (holding a staged perp walk, which occurred two hours after the suspect had been arrested and brought to the police station and involved taking the suspect outside the station, "at the request of the press, for no reason other than to allow him to be photographed," and which thus "lacked any legitimate law enforcement purpose," violated the Fourth Amendment), *with Caldarola v. Cnty. of Westchester*, 343 F.3d 570, 572, 575-77 (2d Cir. 2003) (holding an unstaged perp walk, in which County officials videotaped employees arrested for submitting fraudulent disability claims while employees were escorted from the County building in which they were arrested to cars in which they were taken to the police station for booking, did not violate the Fourth Amendment where County "possessed a 'legitimate law enforcement justification for transporting' [arrested employees] . . . to the police station" (quoting *Lauro*, 219 F.3d at 213)). O'Neill alleges he was handcuffed and then "paraded" out of the school and into a police car "in view of virtually all classrooms."  Am. Compl. ¶ 11.  This scenario differs from the perp walks addressed in both *Lauro* and *Caldarola* in that it involved no media attention or publicity to a broader audience than those present at the site of the arrest.  Moreover, while Defendants' decision to orchestrate the arrest on school grounds was unnecessary and reflects poor judgment, the arrest cannot be said to have served no legitimate law enforcement purpose.  *See Moore*, 553 U.S. at 173-

---

[6] The Second Circuit Court of Appeals has characterized a "perp walk" as "a widespread police practice in New York City in which the suspected perpetrator of a crime, after being arrested, is 'walked' in front of the press so that he can be photographed or filmed." *Lauro v. Charles*, 219 F.3d 202, 203 (2d Cir. 2000).

74 (holding a State has an interest in arresting a person for a minor offense, even when it has a policy against arrests for such offenses, "because arrest will still ensure a suspect's appearance at trial, prevent him from continuing his offense, and enable officers to investigate the incident more thoroughly"); *Caldarola*, 343 F.3d at 576 (noting County "possessed a 'legitimate law enforcement justification for transporting" arrestee from site of arrest to the police station).

A right is "clearly established" for qualified immunity purposes when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson*, 526 U.S. at 614-15 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The action in question need not have previously been held unlawful; however, the unlawfulness of the officer's conduct must be apparent "in the light of pre-existing law." *Id.* at 615 (quoting *Anderson*, 483 U.S. at 640). Here, O'Neill has not identified, and this Court has not found, any case holding that arresting a juvenile pursuant to a warrant on school grounds, in view of the school community, violates the Fourth Amendment unless exigent circumstances are present. The most closely analogous cases involve efforts by police officers to publicize an arrest to a broader audience by bringing media representatives or other third parties into a suspect's home, *e.g.*, *id.* at 614, or by subjecting the suspect to media attention by engaging in conduct for which there is no legitimate law enforcement justification, such as by staging a perp walk, *e.g.*, *Lauro*, 219 F.3d at 212-13. Even assuming that confidentiality considerations unique to juvenile proceedings are sufficient to render the manner in which O'Neill was arrested constitutionally unreasonable, this Court cannot conclude Defendants should have understood their conduct would violate the Fourth Amendment. While the Court does not condone the decision to orchestrate O'Neill's arrest at school in an unnecessarily public manner, particularly in view of the Commonwealth's policy to protect the privacy of juvenile

13

offenders, the Court concludes Defendants are entitled to qualified immunity as to O'Neill's Fourth Amendment claim.

In addition to challenging the manner of his arrest under the Fourth Amendment, O'Neill also alleges Defendants violated his federal constitutional right to privacy under the Ninth Amendment (Count I) and his substantive due process rights under the Fourteenth Amendment (Count II). Because both claims appear to be predicated upon the existence of a constitutional right to privacy in juvenile arrest records, *see* Pl.'s Letter Opp'n 2 n.3, 4-5, the Court will consider the claims together. *See Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (considering as a single claim plaintiff's allegations that defendants' conduct violated her right to privacy under the Ninth and Fourteenth Amendments).[7]

The constitutional right to privacy "encompasses two distinct interests. 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *Nunez v. Pachman*, 578 F.3d 228, 232 n.7 (3d Cir. 2009) (quoting *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). O'Neill's claims implicate the

---

[7] Defendants argue because O'Neill's substantive due process claim concerns the manner of his arrest, the claim should be analyzed under the Fourth Amendment, and not as a Fourteenth Amendment claim. Defendants are correct that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quotations omitted). This Court agrees that insofar as O'Neill's privacy claim challenges his arrest, as opposed to Defendants' disclosure of the charges against him to the school principal, the claim is more properly analyzed under the Fourth Amendment. *See Lauro*, 219 F.3d at 208 (holding plaintiff's claim that perp walk to which he was subjected violated his Fourteenth Amendment rights was "best viewed as an exacerbation of the seizure that occurred when he was arrested" and was "properly analyzed under the Fourth Amendment"). Because O'Neill also alleges the disclosure of the charges against him violated his privacy rights, however, the Court will analyze this aspect of his claim under the Fourteenth Amendment.

former interest:  the "right not to have intimate facts concerning one's life disclosed without one's consent."  *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (quotations omitted).

In determining whether information is entitled to privacy protection, the Third Circuit Court of Appeals has "looked at whether it is within an individual's reasonable expectations of confidentiality.  The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny."  *Malleus v. George*, 641 F.3d 560, 564 (3d Cir. 2011) (quoting *Fraternal Order of Police v. City of Phila.*, 812 F.2d 105, 112-13 (3d Cir. 1987)).  The Third Circuit has held information entitled to privacy protection includes "a private employee's medical information when sought by the government; medical, financial and behavioral information relevant to a police investigator's ability to work in dangerous and stressful situations; a public employee's medical prescription record; a minor student's pregnancy status; sexual orientation; and an inmate's HIV-positive status."  *Id.* at 565 (citations omitted).  The Third Circuit has also held the right to privacy in personal information extends to information regarding minor students' sexual activity, drug and alcohol use, and relationships when requested as part of a community survey, *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 180 (3d Cir. 2005) (citations omitted), and to exposure of a person's unclothed body, *Doe*, 660 F.3d at 177.

In contrast, the Third Circuit has consistently held the constitutional right to privacy does not extend to criminal records.  *See Nunez*, 578 F.3d at 232-33 (holding there is no constitutionally cognizable privacy interest in expunged criminal records); *Paul P. v. Verniero*, 170 F.3d 396, 403-04 (3d Cir. 1999) (holding plaintiffs had no constitutional right to privacy in their sex offender status); *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir. 1991) (holding "information contained in a police report is not protected by the confidentiality branch of the constitutional right of

15

privacy"); *Fraternal Order of Police*, 812 F.2d at 117 (holding arrest records are not entitled to constitutional privacy protection). In so holding, the Third Circuit has distinguished criminal records from the types of records that are accorded constitutional protection on the basis that arrests and pending criminal charges "are by definition public," making it "unlikely that anyone could have a reasonable expectation that an arrest will remain private information." *Fraternal Order of Police*, 812 F.2d at 117; *see also Paul P.*, 170 F.3d at 403. However, the Court of Appeals has also declined to recognize a constitutional right to privacy in expunged criminal records, holding that even assuming a state expungement statute could create a reasonable expectation of privacy in an expunged record, such records do not possess any "inherent attributes warranting special constitutional treatment." *Nunez*, 578 F.3d at 232-33.

The Third Circuit has not considered whether there is a constitutional right to privacy in juvenile, as opposed to adult, arrest records.[8] There is reason to distinguish juvenile arrest records from adult criminal records. Unlike adult records, juvenile records are widely protected from disclosure under federal and state law, including the provisions of Pennsylvania's Juvenile Act and Juvenile Court Rules described above.[9] *See, e.g.*, *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 105

---

[8] In *Hedges v. Musco*, 204 F.3d 109, 121 n.14 (3d Cir. 2000), a case involving allegations that school officials had violated a student's right to privacy by disclosing the results of a drug test to which school personnel had subjected her, the Third Circuit declined to address whether the student could "have a reasonable expectation of privacy in the fact that she was investigated for drug use," where the parties had not briefed the issue. (The Court of Appeals also found it unnecessary to address whether the student's drug test results were entitled to constitutional privacy protection because it was apparent the student's asserted injuries were not caused by disclosure of the negative test results. *Id.* at 121.)

[9] Although recognizing a violation of a state statute alone "does not automatically give rise to a substantive due process violation," Pl.'s Letter Opp'n 5, O'Neill relies primarily on the provisions of Pennsylvania law that protect the confidentiality of juvenile delinquency proceedings to establish the constitutional right to privacy he asserts. As the Third Circuit has recognized, however,

(1979) (noting "all 50 states have statutes that provide in some way for confidentiality [of juvenile proceedings]"); *United States v. A.D.*, 28 F.3d 1353, 1356 (3d Cir. 1994) (describing the confidentiality provisions of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031-42).  Indeed, confidentiality has been characterized as a "hallmark" of the American juvenile justice system, designed "to protect the young person from the stigma of his misconduct" and thereby to promote the goal of rehabilitation.  *Smith*, 443 U.S. at 107-08 (Rehnquist, J., concurring).  The Supreme Court has also recognized states have a legitimate interest in protecting the anonymity of juvenile offenders.  *See Davis v. Alaska*, 415 U.S. 308, 319 (1974) ("We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender."); *In re Gault*, 387 U.S. 1, 25 (1967) (suggesting "there is no reason why, consistently with due process, a State cannot continue if it deems it appropriate, to provide and to improve provision for the confidentiality of records of police contacts and court action relating to juveniles").

Nevertheless, even assuming the Third Circuit would recognize a constitutional right to privacy in juvenile arrest records, this Court cannot conclude such a right is clearly established even now, much less at the time O'Neill was arrested in 2010.  As a result, the Court must conclude

---

"[s]ubstantive due process rights are founded not upon state law but upon deeply rooted notions of fundamental personal interests derived from the Constitution."  *Nunez*, 578 F.3d at 233 (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) (internal quotation marks and citations omitted)).  While state statutes may inform the judgment of the courts regarding the scope of constitutional rights, "they fall far short of the kind of proof necessary to establish a reasonable expectation of privacy."  *Id.* (quoting *Nilson*, 43 F.3d at 372 (internal quotation marks and citations omitted)); *see also Scheetz*, 946 F.2d at 206-07 (noting "the question of whether a federal constitutional right to privacy has been violated is a distinct question from whether . . . a state common law right to privacy has been violated" and observing "case law cited by the parties as to Pennsylvania confidentiality law cannot control the *federal* constitutional right").

Defendants are entitled to qualified immunity as to O'Neill's privacy claim under the Ninth and Fourteenth Amendments.

In determining whether a constitutional right is clearly established for qualified immunity purposes, "the test is not whether the current precedents protect the specific right alleged but whether the contours of current law put a reasonable defendant on notice that his conduct would infringe on the plaintiff's asserted right." *Gruenke v. Seip*, 225 F.3d 290, 302 (3d Cir. 2000). Whether the defendant was on notice that his conduct violated state law is irrelevant. The clearly established right "must be the federal right on which the claim for relief is based." *Doe v. Delie*, 257 F.3d 309, 319 (3d Cir. 2001) (holding a "state statute cannot 'clearly establish' the federal right for qualified immunity purposes").

First, although the Third Circuit "takes an encompassing view of information entitled to a protected right to privacy," *Sterling v. Borough of Minersville*, 232 F.3d 190, 195 (3d Cir. 2000), it has also recognized the right to privacy is one courts have been "reluctant to expand," *Nunez*, 578 F.3d at 232 (quotation omitted). The Third Circuit has characterized its own prior decisions as recognizing a right to privacy in three categories of information: "sexual information, medical information, and some financial information." *Malleus*, 641 F.3d at 565 (internal citations omitted); *see also Doe*, 660 F.3d at 176. While not exhaustive, these categories provide guidance regarding the contours of the constitutional right to privacy in this Circuit, and it is not clear whether the Third Circuit would expand these categories to include juvenile arrest records. *See Nunez*, 578 F.3d at 233 (suggesting "[c]riminal activity is . . . not protected by the right to privacy" (quotation omitted)).

Second, while the Supreme Court has recognized the states' authority "to provide and to improve provision for the confidentiality of records of police contacts and court action relating to

juveniles," it has treated the issue as a matter on which the states have discretion rather than a constitutional requirement. *In re Gault*, 387 U.S. at 25 (noting a state may provide for such confidentiality "if it deems it appropriate"); *see also Davis v. Alaska*, 415 U.S. 308, 319 (1974) (finding it unnecessary to "challenge the State's interest *as a matter of its own policy in the administration of criminal justice* to seek to preserve the anonymity of a juvenile offender" (emphasis added)).

Third, most of the federal courts that have considered the issue have found considerable doubt as to whether the constitutional right to privacy extends to juvenile arrest and related records. *See United States v. T.E.S.*, No. 98-4423, 1998 WL 774144, at *1 (4th Cir. Nov. 6, 1998) (finding it "doubtful" that a state "may create a constitutionally protected 'reasonable expectation of privacy' in the nondisclosure of a juvenile's criminal record"); *J.P. v. DeSanti*, 653 F.2d 1080, 1088-90 (6th Cir. 1981) (holding there is no constitutional right to privacy in juvenile court records as the interest in nondisclosure of such records "is 'far afield' from those privacy rights that are 'fundamental' or 'implicit in the concept of ordered liberty'")[10]; *Hester v. West Virginia*, No. 07-401, 2008 WL 4298471, at *18 (S.D. W. Va. Sept. 18, 2008) (finding "there is no recognized substantive . . . due process right to privacy in juvenile records"), *aff'd*, 305 F. App'x 109 (4th Cir. 2008); *Beebe v. Mahoney*, No. 07-76, 2008 WL 4198515, at *3 n.4 (D. Mont. Sept. 4, 2008) (noting the federal constitutional right to privacy has not been extended to protect juvenile criminal records); *McCrary v. Jetter*, 665 F. Supp. 182, 186 (E.D.N.Y. 1987) (noting the "amorphous right of privacy" has not been applied to disclosure of materials from a youthful offender file without authorization); *cf. Doe*

---

[10] The Third Circuit has noted its disagreement with *J.P.* insofar as the Sixth Circuit "does not recognize the right to privacy in one's medical information in any setting." *Doe*, 257 F.3d at 319 n.7.

*v. Town of Madison*, No. 09-2005, 2010 WL 3829186, at *5 (D. Conn. Sept. 22, 2010) (holding whether or not a constitutional right to privacy in juvenile records exists, such a right "cannot be said to be clearly established in [the Second Circuit] or other circuits").[11]  Indeed, the only case this Court has found in which a court squarely recognized a constitutional right to privacy in juvenile records is *Soucie v. County of Monroe*, 736 F. Supp. 33 (W.D.N.Y. 1990).  The plaintiff in *Soucie* alleged a county employee had violated his constitutional right to privacy by disclosing and publicizing information contained in a pre-sentence report in the plaintiff's "youthful offender" file, the contents of which were confidential under state law.  In holding the plaintiff had sufficiently alleged a constitutional violation, the court found the plaintiff could "reasonably believe that his pre-sentence disclosures would remain private" based on the state law confidentiality provisions.  *Id.* at 36.  As noted, the Third Circuit has rejected the notion that state confidentiality law alone may define the scope of federal constitutional right to privacy.  *See Nunez*, 578 F.3d at 233 & n.14; *Scheetz*, 946 F.2d at 207.

This Court agrees it should have been clear to Defendants that disclosing the charges against O'Neill to the principal in the absence of a delinquency finding or a court order violated state law.

---

[11] *Bowser v. Blair County Children & Youth Services*, 346 F. Supp. 2d 788 (W.D. Pa. 2004), on which O'Neill relies, is inapposite.  In *Bowser*, the district court held a parent stated a claim for violation of her constitutional right to privacy based on allegations that family services workers had brought unaffiliated third parties into the parent's home and allowed them to be present while the workers performed duties in connection with dependency proceedings concerning the parent and her daughter.  *Id.* at 801.  In so holding, however, the court cited the "almost universal view found in the law that privacy exists with regard to matters surrounding the parent's rearing of children and with regard to the state's role in ensuring such child rearing is not abusive, damaging and stigmatizing." *Id.*; *see also id.* at 800 (noting "[p]rivacy rights . . . include the right to make decisions regarding child rearing and family relationships").  The case did not involve juvenile delinquency proceedings, and the court therefore had no occasion to address whether there is a constitutional right to privacy in juvenile arrest records.

Nevertheless, given the lack of precedent supporting a constitutional right to privacy in juvenile arrest records and the Third Circuit's hesitation to expand the protection against disclosure of personal matters beyond the categories of sexual, medical, and financial information, the Court cannot conclude it would have been clear to a reasonable officer that disclosure of the charges violated O'Neill's constitutional right to privacy. Accordingly, Defendants are also entitled to qualified immunity as to O'Neill's Ninth Amendment and substantive due process claims.

Count II of the Amended Complaint also alleges a violation of O'Neill's procedural due process rights. To state a procedural due process claim under § 1983, a plaintiff must allege "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). The plaintiff must also, "at a minimum, prove recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate decision to deprive' the plaintiff of due process." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994).

The parties address O'Neill's procedural due process claim only briefly. Defendants argue the claim should be dismissed because the Amended Complaint fails to identify both the interest of which O'Neill was allegedly deprived and the procedures he contends were inadequate. O'Neill maintains he has sufficiently pleaded Defendants' failure to comply with applicable Juvenile Court Rules and Juvenile Act provisions, noting these laws "clearly place substantive limitations on the discretionary dissemination of private and confidential information of juveniles." Pl.'s Letter Opp'n 3. The Court will therefore construe the claim as alleging O'Neill was deprived of procedural due process when Defendants disclosed the charges against him to the school principal absent an

adjudication of delinquency or a court order authorizing the disclosure, in violation of 42 Pa. Cons. Stat. Ann. §§ 6308 and 6341(b.1) and Juvenile Court Rule 163.

Although O'Neill suggests these provisions conferred a state-created liberty interest in the confidentiality of law enforcement records pertaining to him,[12] *see* Pl.'s Letter Opp'n 3, he cites no authority recognizing such a right. There is authority suggesting similar state confidentiality laws do not create a liberty interest sufficient to trigger due process protections. *See Boyd v. Lake Cnty.*, No. 04-3095, 2007 WL 1598086, at *5 (D. Or. June 1, 2007) (holding Oregon statute limiting disclosure of juvenile records did not create a constitutionally protected liberty interest); *McCrary*, 665 F. Supp. at 184-86 (holding New York statute prohibiting disclosure of all official records pertaining to a youthful offender adjudication, except where permitted by statute or upon specific authorization of the court, did not create a liberty interest protected by the Due Process Clause). Indeed, in *United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981), the Third Circuit Court of Appeals held 42 Pa. Cons. Stat. Ann. § 6308(c), which, at the time, prohibited dissemination of juvenile fingerprint and photographic records to other law enforcement officers without a court order, did not create a liberty or property interest protected by the due process clause. In light of this authority, it was not clearly established at the time Defendants disclosed the charges against O'Neill to the school principal that the disclosure implicated a constitutionally protected liberty or property interest. Accordingly, Defendants are also entitled to qualified immunity as to O'Neill's procedural due process claim.

Because Defendants are entitled to qualified immunity as to O'Neill's federal claims, those

---

[12] O'Neill does not contend he had a state-created property interest in nondisclosure of law enforcement records pertaining to him.

claims (Counts I and II) will be dismissed with prejudice. Having dismissed O'Neill's federal claims, this Court will decline to exercise supplemental jurisdiction over his remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction"). Therefore, Counts III through VI of the Amended Complaint will be dismissed without prejudice.

An appropriate order follows.

BY THE COURT:


    /s/ Juan R. Sánchez
Juan R. Sánchez, J.